[703 NYS2d 103]

Manuel Cruz, Doing Business as Cruz Automotive Service, et al., Respondents-Appellants, v NYNEX Information Resources et al., Appellants-Respondents.

First Department, February 10, 2000

### APPEARANCES OF COUNSEL

*Lawrence Greenapple* of counsel, New York City (*Gary C. Fischoff* on the brief, Garden City; *Cox Buchanan Padmore & Shakarchy,* and *Fischoff & Associates,* attorneys), for respondents-appellants.

*Guy Miller Struve* of counsel, New York City (*D. Scott Tucker* and *Lisa D. Reifenberg* on the brief; *Davis Polk & Wardwell,* and *Robert Ernst,* attorneys), for NYNEX Information Resources and another, appellants-respondents.

*Michael J. Templeton* of counsel, New York City (*Thomas E. Albright* on the brief; *Jones, Day, Reavis & Pogue,* attorneys), for Reuben H. Donnelley, appellant-respondent

### OPINION OF THE COURT

WILLIAMS, J. P.

This appeal raises the issue of whether, for purposes of General Business Law article 22-A (§ 349 *et seq.*) "Consumer Protection from Deceptive Acts and Practices," the term "consumer" encompasses small businesses which purchase a widely sold service that can only be used by businesses. We hold that it does not.

The facts are as follows. Plaintiffs are an automotive repair service, a video service and two small law firms that purchased advertisements in defendants Bell Atlantic's and NYNEX Infor-

mation's[1] (defendant publishers) "Yellow Pages" publications covering Albany, parts of New York City and parts of Long Island over the last three to six years.[2] R.H. Donnelley, Inc. is a soliciting agent for advertisements in the Yellow Pages.[3] The Yellow Pages is the well-known telephone directory that provides telephone listings of businesses; the advertisements at issue are in addition to the standard listings.

Directories are published in a series of successive issues for the various geographic regions of New York State. Each issue remains in circulation until it is replaced by its successor, typically, but not necessarily, at 12-month intervals. For instance, the current Manhattan Yellow Pages Directory is dated May 1999-April 2000; the previous one was dated May 1998-April 1999. Distribution of new issues of the directories may begin either before or after the first day of the first month of the issue period and is initially made to the homes and businesses in the relevant geographical area. This can take anywhere from several days to several weeks depending on the size of the area and of the directory. A secondary distribution of the issue is made to customers who move into the geographical area or who request a copy. This takes place until all copies of the current issue are distributed or the next issue is ready for distribution.

Businesses seeking to place advertisements in the directories submit a standard application to NYNEX Information that becomes a contract upon publication of the advertisement. The application includes preprinted terms and conditions which are applied to all applicants and apparently not subject to negotiation. The contract terms relevant to this appeal have been unchanged since 1991, and include:

Section 3, "Issue Period," which defines the normal "issue period" or life of a directory as 12 months subject to increase or decrease, at NYNEX's instance, by up to six months, reserves to NYNEX the decision whether to publish a directory, and states that "NYNEX will attempt to notify [applicants] if it decides to alter an issue period or not to publish a directory";

Section 5, "Payment for Advertising," which states that the advertiser will pay NYNEX the monthly rates listed on the ap-

---

1. Now doing business as "Bell Atlantic Yellow Pages Co."

2. Plaintiffs purport to represent a class consisting of all advertisers in each directory published and distributed by NYNEX in New York State during the six years prior to the filing of the complaint; however, such class has not been certified and the issue was not raised on this appeal.

3. Cited in the complaint as Reuben H. Donnelley.

plication, that NYNEX will bill the advertiser monthly on its phone bill during the issue period of the directory containing its ad, that NYNEX may require full or partial payment prior to publication, and that the advertiser will pay all advertising bills by the due date on the bill; and

Section 8, "Limitation of Liability of NYNEX" "If there is an error or omission in any advertisement caused by NYNEX, an affiliate or an agent of NYNEX, NYNEX will reduce the charges to be paid for that advertisement during the issue period. The reduction in charges will be equal to the proportion by which the error or omission reduces the value of the advertisement as determined by NYNEX. The amount reduced will not be greater than the total of the charges to be paid for that advertisement during the issue period. I must make any claim of such an error or omission during the issue period for the advertisement."

Section 17, "Entire Agreement," a standard merger clause stating that the application is the entire agreement between NYNEX and the advertiser, superseding any other verbal or written agreement on the subject.

The agreement only specifies the first month and year of the issue period and does not specify when distribution of the directories will begin or how long initial distribution will last. It does not specify the manner of distribution.

Plaintiffs commenced this action in 1998 pleading two causes of action grounded in breach of contract and two others grounded in article 22-A of the General Business Law. Prior to answers being filed, defendant publishers and defendant Donnelley moved, in separate motions, to dismiss for failure to state a claim and on the basis of documentary evidence, i.e., the form agreements. Plaintiffs opposed the motions and crossmoved for summary judgment, submitting witness affidavits and supporting exhibits. Defendant publishers then submitted affidavits of fact.

The motion court upheld the General Business Law claims, rejecting the defense contention that the business-to-business transactions complained of were not within the statutory ambit. The court found that several of the indicia of a consumer transaction were present. As for the contractual claims, the court dismissed all such claims against Donnelley, reasoning that it was an agent for fully disclosed principals and had undertaken no personal liability. It also dismissed those contract claims against defendant publishers as to the method of distribution, the number of directories distributed, and the hiring

and training of distributors, citing the merger clause as barring extrinsic evidence as to such issues. However, the court upheld the remaining contractual claims as to the untimeliness of distribution, the failure to attempt notice to the advertisers of a change in the issue period, and the applicability of the refund provision to errors and omissions in the distribution of directories. The motion court denied plaintiffs' cross motion for summary judgment as premature due to lack of class certification, without prejudice to renewal upon such certification (*see*, n 2, *supra*).

■ Article 22-A of the General Business Law, which includes section 350 *et seq.*, is entitled "Consumer Protection from Deceptive Acts and Practices." The provisions relevant to this matter are as follows:

"§ 350. False advertising unlawful

"False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

"§ 350-a. False advertising

"1. The term 'false advertising' means advertising * * * if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement * * * but also the extent to which the advertising fails to reveal facts material in the light of such representations."

"§ 350-e. Construction * * *

"3. Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

In New York law, the term "consumer" is consistently associated with an individual or natural person who purchases goods, services or property primarily for "personal, family or household purposes" (*see, e.g.*, General Business Law §§ 399-c, 399-p [1] [c]; General Obligations Law § 5-327 [1] [a]; CPLR 105 [f]; UCC 9-109 [1]). The Practice Commentaries accompanying

General Business Law article 22-A leave no doubt as to the statute's primary concern with the consumer (*see*, Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 565-576; Givens, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law art 22-A, 1999-2000 Pocket Part, at 214-256). Similarly, the Southern District of New York in *Genesco Entertainment v Koch* (593 F Supp 743, 751-752) noted: "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods * * * The consumer oriented nature of the statute is evidenced by the remedies it provides. [The statute] provides parties with the opportunity to receive the greater of actual damages or $50. The New York cases where plaintiffs have recovered under [the statute] further reflect its consumer orientation since they uniformly involve transactions where the amount in controversy is small."

The statute's consumer orientation does not preclude its application to disputes between businesses per se, but it does severely limit it. In *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank* (85 NY2d 20), where two not-for-profit union pension funds sought relief under the statute (§ 349) against a large bank alleging that the bank failed to inform them that the accounts they opened would not pay interest on deposits over $100,000, the Court of Appeals held that one seeking to recover pursuant to article 22-A must "as a threshold matter * * * charge conduct of the defendant that is consumer-oriented * * * A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof [citations omitted]" (*supra,* at 25-26). The threshold requirement of consumer-oriented conduct is met by a showing that "the acts or practices have a broader impact on consumers at large" in that they are "directed to consumers" or "potentially affect similarly situated consumers" (*supra,* at 25, 27). This threshold test assures that the statute is applied in accordance with the legislative intent, the particular parties and circumstances notwithstanding. The "potentially affect[s] similarly situated consumers" phraseology seems particularly effective in assessing the claims of businesses or other atypical plaintiffs in that it allows them the leeway to state their claims but nevertheless maintains the statutory focus on consumers at large. Thus, in *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*

(*supra*, at 26), the Court found that defendant's conduct fell within the statutory ambit where the union pension funds were treated "as any customer entering the bank to open a savings account."

At first glance, the transactions in the matter at bar might appear to be within the ambit of General Business Law article 22-A, i.e., since they are modest in value (*see, Teller v Bill Hayes, Ltd*, 213 AD2d 141, 147, *lv dismissed in part and denied in part* 87 NY2d 937), are repeated regularly with numerous parties (*see, Dimovich v OnBank & Trust Co.*, 242 AD2d 922, 923, *lv denied* 92 NY2d 804), rely on a form contract (*see, New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 321), and involve parties with a large disparity in economic power and sophistication (*see, supra*). But this analysis must take due account of the threshold question noted above—whether the conduct at issue is consumer-oriented.

Since advertisement space in the Yellow Pages is, by definition, a commodity available to businesses only, and plaintiffs fail to show how the complained-of conduct might either directly or potentially affect consumers, such conduct does not fall within the parameters of the statute.

■ With reference to plaintiffs' claims for breach of contract, the motion court correctly dismissed those claims as to defendant Donnelley, since it is unquestioned that Donnelley was merely the agent of a disclosed principal and, thus, had no personal liability under the contract (*see, Crimmins v Handler & Co.*, 249 AD2d 89, 91-92). The court also correctly dismissed the contract claims as they related to issues regarding the manner and number of the distribution of the directories, and the hiring and training of distributors, citing the absence of express language in the contract concerning those matters, as well as the presence of a merger clause in the agreement.

However, the remaining contract claims, wherein plaintiffs allege that the telephone company defendants breached their agreement as to the timeliness of the distribution of the directories and, therefore, owe plaintiffs refunds, also should have been dismissed. The agreement contains no express language *requiring* that a new directory be distributed on the first day of the first month of its issue period or that advertisers be given notice of any change in the issue period. Moreover, section 8 of the agreement, which provides for a refund where there is an omission or error in a published advertisement, clearly and unambiguously refers only to the content of a published advertisement, not the distribution of the directories.

Therefore, the court erred in reading the agreement to require payment of a refund, upon demand, when the directory is distributed after the first day of the first month of the issue period, and also erred in using, to allegedly support such a reading, extrinsic evidence of defendant publishers' sometime custom and practice of voluntarily making so-called "goodwill" refunds (*see*, *Travelers Indem. Co. v Buffalo Motor & Generator Corp.*, 58 AD2d 978, 979).

Accordingly, the order of Supreme Court, New York County (Ira Gammerman, J.), entered April 22, 1999, which, to the extent appealed from, denied defendants' respective motions for dismissal of the complaint except as to the first and second causes of action against defendant Donnelley and except as to the first and second causes of action against defendants NYNEX Information and Bell Atlantic to the extent that they were based on those defendants' failure to distribute a certain number of telephone directories in a certain manner, should be modified, on the law, the motions granted and the complaint dismissed, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

RUBIN, SAXE and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered April 22, 1999, which, to the extent appealed from, denied defendants' respective motions for dismissal of the complaint, except as to the first and second causes of action against defendant Donnelly and except as to the first and second causes of action against defendants NYNEX Information and Bell Atlantic, modified, on the law, the motions granted and the complaint dismissed, and otherwise affirmed, without costs.