OPINION OF THE COURT
Stephen G. Crane, J.
Do you remember the commercial featuring the elderly woman asking, in high dudgeon, “Where’s the beef?” This case presents the same question.
*792 In this foreclosure action, plaintiff moves,[1] pursuant to CPLR 3211 (a) (7) and (b), to dismiss defendant Amnon Issacharoffs (A. Issacharoff) fourteenth affirmative defense and first counterclaim (fraud), fifteenth affirmative defense and second counterclaim (breach of the covenant of good faith and fair dealing), sixteenth affirmative defense and third counterclaim (rescission), seventeenth affirmative defense and fourth counterclaim (violation of General Business Law § 349), and claims for punitive damages. The Court grants plaintiff’s motion to the extent of dismissing the seventeenth affirmative defense and fourth counterclaim and the demand for punitive damages, and otherwise denies the motion.
Background
Defendants Matthew Issacharoff (M. Issacharoff) and Zafar Amin (Amin) were officers and shareholders of Akamin Trading Company, Ltd. (Akamin), a wholesaler of uniforms. A. Issacharoff was a shareholder of Akamin. Plaintiff is a Delaware corporation authorized to do business in New York and, until August 1999, was known as NationsCredit Commercial Corporation.
The following allegations are taken from plaintiff’s complaint. On or about February 13, 1998, plaintiff made available to Akamin a revolving loan and credit facility of up to $3,500,000. To evidence this indebtedness, Akamin executed and delivered a loan and security agreement. In consideration of plaintiff making the revolving loan and credit facility available to Akamin, M. Issacharoff and Amin executed and delivered a guaranty. They jointly and severally, unconditionally and irrevocably guaranteed the payment when due of any obligations and liabilities to plaintiff from Akamin.
As additional security, A. Issacharoff executed and delivered to plaintiff a collateral mortgage (the Mortgage) covering the premises known as 21 West 95th Street, New York, New York. The Mortgage was limited to $600,000 and provided that the mortgagee shall be entitled to recover its reasonable attorneys’ fees, costs and disbursements in any action or proceeding to enforce the Mortgage.
*793 Akamin, M. Issacharoff, Amin, A. Issacharoff and plaintiff later entered into a forbearance agreement dated May 10,1999. It provided, among other things, that plaintiff would forbear from enforcing its rights and remedies against M. Issacharoff, Amin, A. Issacharoff and others during its term, provided that, in its sole discretion, plaintiff may declare the forbearance period terminated upon certain events of default. M. Issacharoff, Amin, A. Issacharoff and certain other persons acknowledged, among other things, that they had no claims, defenses or offsets against plaintiff, and if Akamin or any obligor defined in the forbearance agreement breached or defaulted with respect to any agreement, covenant, or term of the forbearance agreement, after notice and expiration of the cure period, plaintiff could declare the forbearance period terminated and enforce the security agreement and its security interests in the collateral, including the Mortgage.
In a letter dated November 12, 1999, plaintiff advised counsel for M. Issacharoff, Amin, and A. Issacharoff that each of them was in default of the forbearance agreement for failing to comply with its terms and conditions,[2] and that the entire balance of the obligations was to be paid in full by November 29, 1999.
Plaintiff then commenced this action demanding foreclosure of the Mortgage. In his amended answer, A. Issacharoff asserted 17 affirmative defenses and four counterclaims.
Discussion
Fourteenth Affirmative Defense and First Counterclaim (Fraud) and Sixteenth Affirmative Defense and Third Counterclaim (Rescission)
The amended answer pleads that plaintiff, during negotiations that led to the forbearance agreement, represented that it “intended to honor the terms and conditions of the Forbearance Agreement”; that it would permit M. Issacharoff and Amin to assist in collecting the accounts receivables; and that it intended to honor an oral agreement that furloughed commencement of interest payments from November 1999 to June 1, 2000. The counterclaims for fraud and rescission of the forbearance agreement allege that plaintiff never intended to honor the terms of the forbearance agreement or its oral *794 modification. In particular plaintiff refused to allow M. Issacharoff and Amin to assist in collecting the receivables but plaintiff itself proceeded to try to collect them in a commercially unreasonable manner. Paragraph 63 of the amended answer unabashedly states that “Plaintiff had a preconceived and undisclosed intention not to honor the Forbearance Agreement and Oral Agreement which it concealed from Defendant and not to permit M. Issacharoff and Amin to provide extensive assistance in the collection of account receivables.”
The other elements of a fraud cause of action are stated. The amended answer asserts that plaintiff, through its fraud, secured defendants’ performance by the sale of the business for a recovery of $1 million of the loans due. A. Issacharoff claims damages “in an amount to be determined at trial.” In the alternative, he seeks rescission of the forbearance agreement and plaintiff’s disgorgement of all consideration paid to plaintiff on the sale of the assets.
Where’s the beef? The parties do not address this question; but, even if A. Issacharoff has pleaded a cognizable claim for fraud and recovers, he is in no better position because the forbearance agreement and oral modification will simply drop out of the picture. What will remain is defendants’ guarantees and the security of A. Issacharoffs $600,000 mortgage. Since the parties do not take up this phenomenon, the Court merely notes it and will decide the motion on the basis of the points the parties do raise.
At the heart of the dispute between the parties on the issue of fraud is the doctrine, oft repeated in the cases, that a claim of “fraud will not arise when the only fraud charged relates to a breach of contract.” (Trusthouse Forte [Garden City] Mgt. v Garden City Hotel, 106 AD2d 271, 272 [1st Dept 1984]; see also, Brumbach v Rensselaer Polytechnic Inst., 126 AD2d 841 [3d Dept 1987].) The assertion of this doctrine, however, is not dispositive but is merely the threshold of analysis.
The courts have struggled, not only in the fraud area but with claims of negligence as well, to spell out the separate spheres for each when a breach of contract claim is also asserted. (See, e.g., Sommer v Federal Signal Corp., 79 NY2d 540, 550-551 [1992] [“the borderland between tort and contract * * * These borderland situations most often arise where the parties’ relationship initially is formed by contract, but there is a claim that the contract was performed negligently”]; Bellevue S. Assocs. v HRH Constr. Corp., 78 NY2d 282, 293 [1991] [strict products liability and breach of contract: “The nature of the *795 defect, the injury, the manner in which the injury occurred and the damages sought persuade us that plaintiffs remedy lies in the enforcement of contract obligations, not the enlargement of strict products liability beyond its intended purposes”]; North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 179 [1968] [conspiracy and breach of contract]; Fourth Branch Assocs. Mechanicville v Niagara Mohawk Power Corp., 235 AD2d 962, 963 [3d Dept 1997] [negligent misrepresentation based on fiduciary relationship: “It is well settled that a simple breach of contract is not a tort unless a legal duty independent of the contract has been violated”].)
A more recent visit to the “borderland” was presented by New York Univ. v Continental Ins. Co. (87 NY2d 308, 316 [1995]):
“Where a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort (see, Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403, 406-407; see also, Deerfield Communications Corp. v Chesebrough-Ponds, Inc., 68 NY2d 954), or where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim (see, North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 179; Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382). Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie (see, Sommer v Federal Signal Corp., 79 NY2d, at 552, supra; Bellevue S. Assocs. v HRH Constr. Corp., 78 NY2d 282, 293-295).”
The Court there further mentioned that general allegations that a party entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim. (Id. at 318; but see, Graubard Mollen Dannett & Horowitz v Moskovitz, 86 NY2d 112, 122 [1995] [“A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties”].)
The case at bar presents, among other misrepresentations, an allegation that plaintiff in negotiating the forbearance agreement had a preconceived and undisclosed intention not to honor it. Merely alleging that a party did not intend to meet its contractual obligations will not support a fraud claim. (Rocanova v Equitable Life Assur. Socy., 83 NY2d 603, 614 [1994].) Yet, a promise made with a preconceived and undis *796 closed intent of not performing it has been held to constitute a misrepresentation. (Sabo v Delman, 3 NY2d 155, 160 [1957].)
How can these pronouncements be reconciled? The distinction, it seems, lies in the difference between a representation of present fact in contrast to future intent. (See, Citibank v Plapinger, 66 NY2d 90, 94 [1985].) Stated otherwise, the distinction is the difference between a mere promissory statement of what will be done in the future versus the misrepresentation of a present fact such as a promise made with the simultaneous intent of not performing it. (Deerfield Communications Corp. v Chesebrough-Ponds, Inc., 68 NY2d 954, 956 [1986].) The Sabo Court, from which paragraph 63 of the amended answer at bar is taken, made the point (at 160) in quoting from Ritzwoller v Lurie (225 NY 464, 467-468):
“While the representations * * * related to something which was to occur in the future * * * we think the allegations in the complaint describe a case where a defendant has fraudulently and positively as with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur.”
Finally, to survive an attack that a tort claim is but a breach of contract in other clothing, there must be a legal duty independent of the contract that has been violated. (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389 [1987].) Or, as stated in Bridgestone/Firestone, Inc. v Recovery Credit Servs. (98 F3d 13, 20 [2d Cir 1996]): “To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract * * * or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract * * * or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.” Helpful to A. Issacharoff at bar is the absence of any claim for damages for breach of the forbearance agreement. This was also the case in Sabo v Delman (supra).
In light of the foregoing discussion, defendants’ pleading of fraud for damages and rescission suffices. They not only claim *797 the misrepresentation of an intent to perform the forbearance agreement but also a misrepresentation of its intent to allow M. Issacharoff and Amin to assist in collecting the accounts receivables. While the forbearance agreement required these defendants to use their best efforts to collect, it was silent as to allowing them to do so. In that very tortured sense, plaintiff’s alleged undertaking to allow them to do so is collateral to the contract. Even if that were insufficient to support the fraud counterclaims, it would undoubtedly suffice as an affirmative defense to the plaintiffs allegations that they defaulted in using their best efforts to collect. “If a promisor himself is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure.” (Aimes v Wesnofske, 255 NY 156, 162 [1931].)
Fifteenth Affirmative Defense and Second Counterclaim (Breach of the Covenant of Good Faith and Fair Dealing)
Plaintiff seeks to dismiss the fifteenth affirmative defense and second counterclaim for breach of the covenant of good faith and fair dealing (the bad-faith claim) on the ground, among others, that it duplicates the fourteenth affirmative defense and first counterclaim for fraud. Whether or not this duplication exists, the claim must be upheld. A. Issacharoff has pleaded no breach of contract claim and his fraud counterclaims stand independent of the contract. Were his tort claims insufficient because they relate to a breach of contract, then his bad-faith claim would be vulnerable. (New York Univ. v Continental Ins. Co., supra at 319.) Besides, there is no congruity of the bad-faith claim with the fraud allegations. The bad-faith claim depends not only on plaintiff obstructing M. Issacharoff and Amin from helping collect the accounts receivables, but also on plaintiff ignoring the warning that its own efforts to collect would alert the customers to the financial difficulties and would make it less likely that the receivables could be fully collected.
Seventeenth Affirmative Defense and Fourth Counterclaim (Violation of General Business Law § 349)
Plaintiff seeks to dismiss A. Issacharoffs seventeenth affirmative defense and fourth counterclaim for violation of section 349 of the General Business Law. One of the elements of a cause of action for violation of section 349 is that the challenged act or practice be consumer-oriented (see, Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995] [the other two elements are that the act was misleading in a material way and that the plaintiff suffered injury as a result of the deceptive act]).
*798 Plaintiff contends that the cause of action fails because the transaction at issue is not consumer-oriented conduct but a private contract. Although this counterclaim essentially concerns a loan, which may be replicated using a standard form with other customers, the allegations of deceptive acts indicate that the conduct at issue was particular to A. Issacharoff and not a type of standard practice (see, Cruz v NYNEX Information Resources, 263 AD2d 285 [1st Dept 2000] [section 349 is limited to only those business-to-business transactions where the acts or practices have a broader impact that might potentially affect similarly situated consumers]). In other words, the conduct here involved a private contract unique to these parties rather than conduct affecting the consuming public at large. (New York Univ. v Continental Ins. Co., supra at 314, 321 [holding insufficient a section 349 claim despite allegations of numerous instances of similar bad-faith practices respecting policyholders nationwide].)
Punitive Damages
Plaintiff asserts that punitive damages are not available because the amended answer alleges only a private wrong which was not willful, wanton, outrageously immoral, or criminal. Because plaintiff’s alleged conduct “was focused upon [defendants] and not aimed systematically at the public generally” (American Tr. Ins. Co. v Associated Intl. Ins. Co., 261 AD2d 251, 252 [1st Dept 1999]), A. Issacharoffs demand for punitive damages is dismissed. A. Is sachar off claims that defrauding borrowers is a matter of public concern. The Court agrees, but the allegations do not satisfy the standard for imposing punitive damages. The alleged representations were made not to the public but were collateral to the forbearance agreement.[3]
Accordingly, it is hereby ordered that plaintiffs motion is granted to the extent of severing and dismissing the seventeenth affirmative defense and fourth counterclaim and A. Issacharoffs demand for punitive damages, and the motion is otherwise denied; and it is further ordered that the amended answer is severed accordingly and the remaining claims and counterclaims therein are in all other respects continued.

. The original notice of motion addressed the first two counterclaims. In opposition defendant, A. Issacharoff, served an amended answer as of right. (CPLR 3025 [a].) Plaintiff then requested that the motion be applied to the amended answer which added two more counterclaims. The Court considers the motion against the amended answer. (Sage Realty Corp. v Proskauer Rose, 251 AD2d 35, 38 [1st Dept 1998].)

. Specifically, plaintiff claimed that the accounts receivable were not genuine, that M. Issacharoff and Amin had failed to use their best efforts to collect them and that the first interest payment due November 10, 1999, was in default.

. Plaintiff contends that all of A. Issacharoffs counterclaims should be dismissed and only the affirmative defenses be allowed to survive because he will only be entitled to offsets. This argument perhaps is asking “where’s the beef?” Since plaintiff raises this issue only in its reply memorandum, the Court will not entertain it.