■ MARK E. HOLLEY, Respondent, v TRANSOCEANIC CABLE COMPANY, Appellant. [753 NYS2d 477] —Order, Supreme Court, New York County (Carol Huff, J.), entered March 5, 2001, upon a jury verdict, awarding plaintiff $1,137,053, unanimously reversed, on the law, without costs, and the case remanded for a new trial.

On December 28, 1996, plaintiff, a New York resident, was hired as the chief cook for The Global Link, a ship operated by defendant, which was then docked in St. Thomas, U.S. Virgin Islands. Late in the evening of January 15, 1997, plaintiff tripped and fell down a ship stairway, injuring his back and neck and causing him significant pain. Plaintiff reported the accident to the ship's chief mate who gave plaintiff ibuprofen for pain. The next morning, plaintiff complained of continuing severe pain, and the chief mate accompanied plaintiff to a local hospital, where he was given an injection and prescriptions to relieve his back and neck pain. The hospital instructed plaintiff to ice his back and neck and provided him with a "Sick Leave Certificate," on a form provided by the ship's officer, which granted plaintiff "sick leave for one day from 01/16/97 to

01/16/97." Plaintiff returned to the ship and rested for the remainder of the day.

Early in the morning of January 17, 1997, the chief mate awoke plaintiff, who reported that he was still in pain and unable to report to work. The record reflects conflicting evidence as to what happened next. According to plaintiff's version, the ship's captain was called to plaintiff's room, and, despite plaintiff's protestations that he was unable to work because of the pain, the captain ordered him to return to work or be fired. When plaintiff repeated that he was in pain and unable to work, the captain fired him for "failure to turn to." According to the captain's testimony, plaintiff appeared to be fit for duty, but, based upon his complaints of pain, the captain nonetheless offered to have plaintiff return to the hospital in St. Thomas for additional medical care and to provide someone to assist plaintiff in carrying out his shipboard duties. According to the captain, plaintiff rejected his offers and insisted that he could not work, even with help, and wanted to be seen by his own doctor in New York, leaving the captain with no choice but to discharge plaintiff. Plaintiff returned to New York, where he sought medical care for his injuries.

Plaintiff was subsequently diagnosed as having suffered two herniated discs, cervical radiculopathy, damage to the spinal nerve roots and scarring in the muscle fibers around the spine, all of which continued to cause him significant pain and to disable him from working. Plaintiff was also diagnosed as suffering from disabling post-traumatic stress disorder and major depression, brought about by his injury and exacerbated by the termination of his employment. He was treated by several doctors, psychologists and physical therapists. Defendant refused to pay for any of plaintiff's medical bills unless and until he submitted to an independent medical examination (IME) by a physician chosen by defendant. Although plaintiff initially agreed to do so, he later refused to undergo an IME on the advice of his attorney. Still later, pursuant to court order, plaintiff did undergo an IME by defendant's physician, who determined, contrary to the conclusion reached by plaintiff's physicians and therapists, that plaintiff was fit for duty. Based on the result of the IME, defendant notified plaintiff that his requests for maintenance and cure were denied.

Pursuant to his complaint, plaintiff sought damages under the Jones Act (46 USC Appendix § 688) and general maritime law for personal injuries he alleges resulted from defendant's negligent maintenance of the ship's stairway and/or the unseaworthiness of The Global Link; under general maritime

law for "maintenance and cure," as well as for compensatory and punitive damages for defendant's failure to provide maintenance and cure; and under state law, for wrongful withholding of wages and wrongful discharge. Pursuant to pretrial orders made with his consent, plaintiff's state law wage and wrongful discharge claims were dismissed, as was his claim for punitive damages arising from defendant's alleged failure to provide maintenance and cure. Thus, the claims for personal injury, for maintenance and cure, and for compensatory damages resulting from defendant's failure to provide maintenance and cure were the only claims reserved for trial.

Prior to trial, defendant moved to preclude plaintiff from offering any evidence of or alluding to his discharge, arguing that the discharge was irrelevant to the claims being tried and that any reference to the discharge would be improper and overly prejudicial to defendant. That motion was denied by Supreme Court. Plaintiff's evidence included testimony regarding his version of the circumstances of his discharge and the view of at least one fellow seaman that the discharge was unfair. In addition, one of plaintiff's therapists testified that plaintiff's depression was exacerbated, if not caused, by the termination of his employment.

The jury found that defendant was negligent in maintaining the ship's staircase and that defendant wrongfully failed to provide plaintiff with maintenance and cure. The jury returned a verdict for plaintiff of $529,250 on his Jones Act negligence claim; $55,750 in maintenance and cure; and $450,000 in past and future compensatory damages, which the jury attributed to defendant's wrongful failure to provide maintenance and cure.

Defendant's primary contention on appeal is that Supreme Court erred when it permitted plaintiff to present evidence related to the circumstances of his discharge. Defendant argues that such evidence was not only irrelevant to the claims before the jury, but highly prejudicial, painting defendant as having acted callously toward plaintiff, and, thus, opening the door to a jury award of damages for what it may have viewed as an unfair discharge or as a punishment for what it might have seen as the defendant's cruelty toward plaintiff.

The evidence related to the termination of plaintiff's employment was clearly irrelevant to his negligence and unseaworthiness claims for personal injuries resulting from his fall down The Global Link's steps. A review of applicable maritime law confirms that the evidence of plaintiff's discharge was also irrelevant to his claim for maintenance and cure and his related

claim for damages arising from defendant's failure to provide maintenance and cure.

A ship's owner or master is obligated, under general maritime law, to provide a crew member who becomes sick or injured while employed in the ship's service with "maintenance and cure" (*see e.g. Calmar S.S. Corp. v Taylor*, 303 US 525, 527 [1938]). "Maintenance" is the right of a seaman to payment for food and lodging, and "cure" is the right to necessary medical care for the treatment of the illness or injury (*see e.g. Vaughan v Atkinson*, 369 US 527, 531 [1962]; *Calmar S.S. Corp. v Taylor*, *supra* at 528). The obligation to provide maintenance and cure continues until the seaman recovers or until his condition is diagnosed as permanent and incurable, the point known as "maximum cure" (*see e.g. Vella v Ford Motor Co.*, 421 US 1, 4-5 [1975]). The obligation to provide maintenance and cure is not conditioned on negligence or culpability by the owner or master of the ship (*Calmar S.S. Corp. v Taylor*, *supra* at 527-528; *see also Cortes v Baltimore Insular Lines*, 287 US 367), nor is it limited to those cases where the injury or illness arises as a result of the sailor's employment (*Calmar S.S. Corp. v Taylor*, *supra* at 527).

While maintenance and cure are not, in any respect, "damages" for a wrong committed (*Calmar S.S. Corp. v Taylor*, *supra* at 528), the breach of the duty to provide maintenance and cure to the injured or ill crew member is tortious and will render the ship's owner or master liable for all consequential damages suffered by the seafarer as a result of the dereliction (*Cortes v Baltimore Insular Lines*, *supra* at 371). The remedy for such a breach includes full tort damages, including damages for any physical injury, the aggravation of an existing injury, or any disability, pain and suffering, lost wages, as well as any additional medical and maintenance expenses suffered as a result of the failure to provide maintenance and cure (*Kraljic v Berman Enters., Inc.*, 575 F2d 412, 415 [2d Cir 1978], citing G. Gilmore and C. Black, Jr., Law of Admiralty, at 311 [2d ed 1975]; *see also Downie v United States Lines Co.*, 359 F2d 344 [3d Cir 1966], *cert denied* 385 US 897). As Justice Cardozo instructed, "If the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him; the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt" (*Cortes v Baltimore Insular Lines*, *supra* at 371).

If the failure to provide maintenance and cure is found to have been "callous," or "willful and persistent" (*Vaughan v At-*

*kinson*, 369 US 527, 530-531 [1962]), the employer may also be liable for attorneys' fees incurred by plaintiff in compelling the payment of maintenance and cure (*id.*; *Kraljic v Berman Enters., Inc.*, 575 F2d 412, 416 [2d Cir 1978]). Punitive damages, however, are not available in a cause of action for maintenance and cure (*Kraljic v Berman Enters., Inc.*, *supra* at 416; *see also Guevara v Maritime Overseas Corp.*, 59 F3d 1496 [5th Cir 1995, en banc]).

Plaintiff claimed that he was entitled to maintenance and cure because he was injured and rendered unable to work while in the service of The Global Link. Defendant asserted that plaintiff was not entitled to maintenance and cure because he was not disabled from working beyond the day after his fall. Thus, the material facts in dispute with regard to the maintenance and cure claim were whether plaintiff continued to be disabled as a result of his fall on and after January 17, 1997, and, thus, whether defendant's refusal of maintenance and cure was wrongful. Evidence that plaintiff's employment was terminated and of the circumstances surrounding the termination was clearly not relevant to those facts and should not have been admitted.

Plaintiff argues that the evidence related to his discharge is relevant to defendant's "callousness," which plaintiff described as the "heart" of his case against defendant.* However, it is not the callousness of plaintiff's discharge that is in issue here; the wrongful discharge claim was dismissed upon plaintiff's consent. The issue to be decided by the jury was simply whether plaintiff was, in fact, disabled on and after January 17, 1997, and, thus, whether defendant's refusal to pay plaintiff maintenance and cure was wrongful. Moreover, as noted, a defendant's "callousness" is relevant only with regard to a claim for attorneys' fees—a claim that is not asserted in plaintiff's complaint and one that he specifically disavows in his brief to this Court.

The evidence related to plaintiff's discharge was not only irrelevant, it was highly prejudicial to defendant, possibly opening the door to the jury to impermissibly award plaintiff damages for what it might have viewed as an unfair discharge, despite the fact that plaintiff's wrongful discharge claim had been dismissed, or punitive damages, which are not available

---

\* The record suggests that at least some of the damages the jury awarded to plaintiff were based on testimony that plaintiff's emotional distress was caused or exacerbated by the termination of his employment. Since the wrongful discharge claim had been dismissed, any such damages would clearly not be appropriate or permissible.

in a cause of action for maintenance and cure (*see Pires v Frota Oceanica Brasileira,* 240 AD2d 323). Although Supreme Court instructed the jury that it was not permitted to find that the defendant acted wrongfully when it discharged plaintiff or to award any damages because of the discharge, such admonition was undoubtedly too late to undo the prejudicial effect of the discharge evidence. Admission of this irrelevant and prejudicial evidence served to deny defendant its right to a fair trial and warrants vacating the judgment and remanding the matter for a new trial.

In view of the foregoing determination, we need not address defendant's contentions that it was also deprived of a fair trial by misconduct on the part of plaintiff's counsel. Concur—Andrias, J.P., Saxe, Buckley, Rosenberger and Marlow, JJ.