■ U.W. MARX, INC., Respondent, v BONDED CONCRETE, INC., Appellant. [776 NYS2d 617]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Canfield, J.), entered November 13, 2002 in Rensselaer County, upon a verdict rendered in favor of plaintiff.

The instant dispute arises out of a contract to provide concrete for new sidewalks as part of a larger school renovation project. The contract was entered into by plaintiff, a general contractor, and defendant, a concrete supplier. Less than a year after their installation, the sidewalks developed pock marks. Upon being advised of the problem, defendant offered to remove the existing sidewalks and provide new concrete. When defendant refused to comply with plaintiff's additional demand to pay the costs associated with installing new sidewalks, litigation ensued.

Asserting theories of breach of contract and breach of various warranties, plaintiff's original complaint sought to recover all costs incurred in replacing the sidewalks, which totaled over $85,000. After filing a note of issue, however, plaintiff successfully moved to amend the complaint to add a claim for deceptive business practices under General Business Law § 349. Plaintiff alleged that defendant knew that its concrete was defective because its gravel pit had been removed from a Department of Transportation (hereinafter DOT) list of approved sources for DOT highway projects as of January 1995 because its coarse aggregate did not meet DOT testing standards (*see Matter of Troy*

*Sand & Gravel Co. v New York State Dept. of Transp.*, 277 AD2d 782 [2000], *lv denied* 96 NY2d 708 [2001]; *Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.*, 270 AD2d 698 [2000], *lv denied* 95 NY2d 755 [2000]).

The parties' respective positions on the cause of the sidewalks' deterioration are as follows. Plaintiff claims that the sidewalks deteriorated because of an unsatisfactory air void system and because the coarse aggregate in defendant's concrete contained excessive amounts of unsound shale and, thus, the concrete could not withstand winter conditions. Plaintiff further denies that anything its employees did when installing the sidewalks caused or contributed to their deterioration. Defendant, on the other hand, steadfastly defends the quality of its product and claims that improper curing and installation techniques by plaintiff's employees caused the sidewalks to deteriorate.

Notably, both sides presented compelling evidence to support their respective positions at trial, but the jury ultimately found in plaintiff's favor on all causes of action. It awarded plaintiff $86,465.79 on the breach of contract and warranty causes of action and nearly $87,000 in counsel fees on the deceptive business claim. On this appeal, we are compelled to reverse for two reasons. First, Supreme Court improperly permitted plaintiff to amend the complaint to add a deceptive business cause of action. Moreover, prejudicial and irrelevant evidence concerning defendant's dispute with DOT permeated the trial, thus undermining the verdict on the remaining causes of action. Accordingly, a new trial is required on the claims that survive.

We first address the General Business Law § 349 claim. General Business Law § 349 (h) gives private citizens a right of action for deceptive acts or practices in the conduct of any business, trade or commerce. Under the statute, citizens can enjoin an unlawful act or practice, recover the greater of actual damages or $50 and/or obtain reasonable counsel fees (*see* General Business Law § 349 [h]; *see also Stutman v Chemical Bank*, 95 NY2d 24, 28 [2000]). This statutory provision was specifically enacted to "increase the effectiveness of consumer protection laws which prohibit deceptive acts and practices in commerce" (Sponsor's Mem, L 1980, ch 346, 1980 NY Legis Ann, at 146). Stated differently, it is a consumer-oriented statute which "enables consumers to protect themselves instead of being forced to rely on publicly-funded governmental agencies" (Sponsor's Mem, L 1980, ch 346, 1980 NY Legis Ann, at 146; *see* Governor's Mem approving L 1980, ch 346, 1980 Legis Ann, at 147; *see also Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 343-344 [1999]).

In keeping with the statute's legislative history, courts have consistently held that in order to plead and prove a claim under this statute, a plaintiff must make a threshold showing that the challenged act or practice was consumer oriented, that is, it must have a broad impact on consumers at large (*see e.g. Stutman v Chemical Bank, supra*; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25-27 [1995]; *Green Harbour Homeowners' Assn. v G.H. Dev. & Constr.*, 307 AD2d 465, 468 [2003], *lv dismissed* 100 NY2d 640 [2003]; *Teller v Bill Hayes, Ltd.*, 213 AD2d 141, 145 [1995], *lv dismissed and denied* 87 NY2d 937 [1996]). Plaintiff wholly failed to make such a showing in this case. Simply said, the contract at issue was a private, arm's length business transaction between two sophisticated entities, each with substantial prior experience in commercial construction (*see St. Patrick's Home for Aged & Infirm v Laticrete Intl.*, 264 AD2d 652, 655 [1999]; *see also Genesco Entertainment, Div. of Lymutt Indus. v Koch*, 593 F Supp 743, 751-752 [1984]). The terms for this large-scale school renovation project were tailored to meet the school district's unique specifications; defendant's bid proposal was responsive thereto and the contract costs were hardly modest amounts of money. In sum, this was a complex private business transaction, not one based on a standard-form contract addressed to consumers generally (*see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 320-321 [1995]; *Green Harbour Homeowners' Assn. v G.H. Dev. & Constr., supra*; *Parrino v Sperling*, 232 AD2d 618, 619 [1996]; *Teller v Bill Hayes, Ltd., supra*; *cf. Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra*).

Moreover, the dispute over whether defendant breached any aspect of this contract simply does not have broad, consumer-oriented ramifications (*cf. Gaidon v Guardian Life Ins. Co. of Am., supra*). No alleged act of defendant was "directed at the *consuming* public" (*id.* at 343 [emphasis added]; *see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra*; *Revlon Consumer Prods. Corp. v Arnow*, 238 AD2d 223, 224 [1997]), and although defendant's alleged breaches many have had some tangential effect on members of the public (i.e., anyone using the sidewalks while on school property), factual allegations of broad, consumer-oriented deceptive conduct are simply lacking. Said differently, the fact that these sidewalks were being installed on public school property did not elevate this purely private construction dispute into one with broad, consumer protection implications (*see generally Cruz v NYNEX Info. Resources*, 263 AD2d 285, 290-291 [2000]). Supreme Court therefore erred in permitting the complaint to be amended and the jury's award of counsel fees under this cause of action must be vacated.

We turn now to Supreme Court's decision to permit plaintiff to introduce evidence regarding defendant's failure to meet DOT standards and specifications for aggregate used in state *highway* and *bridge* projects. It was error to permit this evidence, which was extensive in nature and highly prejudicial to defendant, because it is undisputed that the specifications for the *sidewalks* on the school renovation project did not require compliance with stringent DOT highway standards. Rather, the specifications merely required compliance with the less rigorous standards established by the American Society for Testing and Materials (hereinafter ASTM). In addition, close scrutiny of this hotly-contested evidentiary dispute confirms that it was offered by plaintiff as part of its "case in chief under the [General Business Law §] 349 claim." Since we have concluded that this claim should not have been permitted in the first instance, it follows that this evidence supporting that claim should have been similarly precluded.

To be sure, during a colloquy on the matter in the middle of trial, plaintiff's counsel raised a secondary basis for introducing this evidence. Specifically, he argued that a reference in defendant's bid submittal to "NY#91AR35" elevated the project specifications from requiring compliance with ASTM standards to requiring compliance with DOT standards. While perhaps facially appealing, this position does not withstand scrutiny. First, it is undisputed that the designation "NY#91AR35" refers to an outdated approval year (i.e., DOT issues approvals on a biannual basis, thus any approval in "1991" was long expired by 1998). In addition, this reference pertains to a *rock* quarry in Cropseyville owned by a *competitor* of defendant ("AR" is an industry term for crushed rock or stone and it is undisputed that crushed *gravel* is at issue in this case). Thus, although defendant is clearly responsible for placing this erroneous reference in its bid, we question whether plaintiff could have reasonably relied on this outdated rock reference in a contract for concrete made with crushed gravel.

In any event, a fair reading of the record reveals that plaintiff did not, in fact, rely on this reference as altering the terms of its own specifications at any time, even when the dispute over the conditions of the sidewalk arose. Indeed, from the onset of the dispute, plaintiff's own expert analyzed the adequacy of the concrete utilizing *ASTM* standards. If plaintiff had really relied upon this erroneous reference as creating a contractual obligation on defendant's part to provide material compliant with DOT standards, surely its own expert would have been so advised and would have conducted his analysis accordingly. This simply did not happen.

Moreover, plaintiff never relied on this particular reference in its pleadings or in pretrial motion papers to make the specific legal argument that it accepted defendant's bid and proceeded with a contract governed by DOT, as opposed to ASTM, standards. Rather, it was not until the middle of trial that plaintiff's counsel honed in on this reference as evidence that the parties had a contract governed by DOT standards. In short, the claim that the contract was governed by DOT standards as a result of this reference was a red herring and should not have been used by plaintiff as a bootstrap to admit evidence concerning the irrelevant DOT dispute. Since there is a strong likelihood that the improper admission of this evidence regarding the DOT dispute may have tainted the outcome of the trial, we reverse the judgment and remit for a new trial (*see e.g. Holley v Transoceanic Cable Co.*, 301 AD2d 417 [2003]; *Rodriguez v New York City Tr. Auth.*, 273 AD2d 370 [2000]; *Cramer v Kuhns*, 213 AD2d 131 [1995], *lv dismissed* 87 NY2d 860 [1995]; *Standard Textile Co. v National Equip. Rental*, 80 AD2d 911 [1981]).

We have considered defendant's remaining nonacademic arguments and find them to be without merit.

Cardona, P.J., Mercure, Peters and Spain, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, and matter remitted to the Supreme Court for a new trial in accordance with this Court's decision.