◼ Northeast Wine Development, LLC, Doing Business as All Star Wine & Spirits, Appellant, v Service-Universal Distributors, Inc., Respondent, et al., Defendant. [804 NYS2d 836]—

Rose, J. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered December 30, 2004 in Albany County, which, inter alia, granted a cross motion by defendant Service-Universal Distributors, Inc. to dismiss the complaint against it.

Plaintiff, a retail wine and liquor store, commenced this action asserting eight causes of action against defendant Service-Universal Distributors, Inc. (hereinafter defendant), a wholesale distributor of wine and liquor. Each cause, in essence, rests upon plaintiff's allegation that defendant has unlawfully refused to sell it certain brands of wine and liquor at the prices listed in defendant's mandatory filings with defendant New York State

Liquor Authority (hereinafter SLA).[1] By means of an order to show cause issued on November 22, 2004, plaintiff simultaneously obtained a temporary restraining order (hereinafter the TRO) that prohibited defendant from violating the Alcoholic Beverage Control Law. When plaintiff later moved for a preliminary injunction and to have defendant held in contempt for violating the TRO, defendant cross-moved to dismiss the complaint for failure to state a cause of action. Supreme Court denied plaintiff's motions and granted defendant's cross motion to dismiss the complaint, prompting this appeal by plaintiff.

Alcoholic Beverage Control Law § 101-b mandates, among other things, that a wholesaler file with the SLA schedules of the bottle and case prices charged to retailers (*see* Alcoholic Beverage Control Law § 101-b [3] [b]). The statute also prohibits a wholesaler from discriminating in price among retailers purchasing the same brand (*see* Alcoholic Beverage Control Law § 101-b [2]), refusing to sell any brand of liquor or wine at the price that is on file (*see* Alcoholic Beverage Control Law § 101-b [4-a]) and requiring a retailer to purchase other brands in order to be able to buy a particular brand (*see* Alcoholic Beverage Control Law § 101-6 [4-a] [e]). Despite plaintiff's claim to the contrary, we view all of its causes of action as necessarily relying on the allegation that defendant's conduct violated these provisions. Were it not for such statutory constraints, freedom of contract would permit defendant to withhold or sell its products to plaintiff and do so at any agreed-upon price. Inasmuch as plaintiff insists, however, that none of its causes of action seeking money damages asserts a private right of action under the statute, we need only address the other statutory or common law underpinnings of each in turn.

In its first and second causes of action, plaintiff alleges that defendant violated General Business Law §§ 349 and 350 by failing to disclose that it was selling wine and liquor to other retailers at prices lower than those offered to plaintiff.[2] However, plaintiff's allegation makes it clear that this conduct was directed at retailers and makes no factual allegations as to how it has had the requisite "broad impact" on consumers (*see U.W. Marx, Inc. v Bonded Concrete, Inc.,* 7 AD3d 856, 858 [2004]; *see also Gray v Seaboard Sec., Inc.,* 14 AD3d 852, 853 [2005], *lv*

---

1. The SLA, although joined as a party, has taken no position in this action or on this appeal.

2. We note that plaintiff admits in its pleadings that it is a common industry practice for a wholesaler to publish retailer price lists without including certain prices, known as "blinds," which are properly on file with the SLA.

*dismissed* 4 NY3d 846 [2005]). The third cause of action, alleging that defendant was unjustly enriched by overcharging plaintiff, is plainly barred because plaintiff admittedly had an express contractual relationship with defendant (*see Hamlin Beach Camping, Catering, & Concessions Corp. v State of New York*, 303 AD2d 849, 852-853 [2003]).

Plaintiff's fourth cause of action, alleging fraud, also fails because there is no allegation of a special relationship between plaintiff and defendant that would have required defendant to disclose that it was offering wine and liquor to other retailers at lower prices (*see Trustco Bank, Natl. Assn. v Cannon Bldg. of Troy Assoc.*, 246 AD2d 797, 799 [1998]). The fifth cause of action, alleging that defendant breached the covenant of good faith and fair dealing, is unavailing because there is no allegation that defendant's actions deprived plaintiff of the benefit of its bargain in purchasing products from defendant (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]; *accord Rooney v Slomowitz*, 11 AD3d 864, 867 [2004]). In its sixth cause of action, plaintiff's allegation that defendant engaged in tortious interference with prospective economic advantage establishes neither that defendant's sole motive for the interference was malice (*see Maas v Cornell Univ.*, 245 AD2d 728, 731 [1997], *affd* 94 NY2d 87 [1999]; *John R. Loftus, Inc. v White*, 150 AD2d 857, 860 [1989]) nor that its actions were the "but for" reason why more retail customers did not patronize plaintiff's store (*see Pacheco v United Med. Assoc.*, 305 AD2d 711, 713 [2003]; *Brown v Bethlehem Terrace Assoc.*, 136 AD2d 222, 225 [1988]).

Unlike the previous causes of action, plaintiff's seventh and eighth causes of action seeking injunctive relief for defendant's noncompliance with the Alcoholic Beverage Control Law are specifically authorized by that statute (*see* Alcoholic Beverage Control Law § 123). In determining whether violations of the statute are alleged, however, we are mindful that "the interpretation given a statute by the agency charged with its enforcement will be respected by the courts if not irrational or unreasonable" (*Matter of Fineway Supermarkets v State Liq. Auth.*, 48 NY2d 464, 468 [1979]; *see Matter of Dubb Enters. v New York State Liq. Auth.*, 187 AD2d 831, 833 [1992]). Here, the agency ruling available to Supreme Court was Bulletin 85, published by the predecessor to the SLA in 1942, interpreting the then new Alcoholic Beverage Control Law, and it provides, in relevant part:

"Q. Where the source of supply of a particular brand is limited, may I restrict my individual sales according to what I regard are the needs of my particular customers each month?

"A. Yes, provided the method used is not inconsistent with the purpose and intent of this Section."

In the absence of any position taken in this action by the SLA, Supreme Court reasonably viewed this interpretation to allow wholesalers to restrict their individual sales to retailers in accordance with what they regard to be the retailers' needs and to allocate specially packaged products where the supply is limited. Since it does not appear that this interpretation has been superseded or disavowed by the SLA, we cannot say that Supreme Court improperly utilized it in denying injunctive relief to plaintiff.

Finally, for Supreme Court to hold defendant in contempt for violating the TRO, it was necessary for plaintiff to establish, with reasonable certainty, defendant's violation of "a lawful judicial order expressing an unequivocal mandate" (*McCain v Dinkins*, 84 NY2d 216, 226 [1994]; *see Matter of Aumell v King*, 18 AD3d 905, 905-906 [2005]). We agree with Supreme Court that, given the lack of any further guidance from either the SLA or the issuing court, the TRO's mandates were contradictory and could not be enforced by contempt because they initially directed defendant to sell plaintiff wine and liquor on a first-come, first-served basis, but then prohibited defendant from discriminating among retailers purchasing the same brands. Thus, Supreme Court did not abuse its discretion in denying plaintiff's motion for contempt.

Crew III, J.P., Peters, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, with costs.