Egan Jr., J.
Appeal from an order of the Supreme Court (Mc-Grath, J.), entered July 6, 2012 in Rensselaer County, which granted defendant’s motion to dismiss the complaint.
Plaintiff and defendant are competitors engaged in the business of providing administration services for tax-deferred retirement plans governed by Internal Revenue Code (26 USC) § 403 (b) and available to, among others, public school employees. Specifically, plaintiff and defendant act as third-party intermediaries between the school districts, as the sponsors of the plans, and the financial firms (or service providers) that offer the financial products in which the individual employees may choose to invest. In early 2011, defendant advised its school district clients of its plan to implement a “Preferred Provider Program” (hereinafter P3) that could potentially reduce the administrative costs incurred in connection therewith. Prior to P3’s scheduled launch date, plaintiff commenced this action alleging that defendant, in touting the advantages of P3, failed to conspicuously disclose the minimum eligibility requirements for participation therein — specifically, that in order to be designated as a “preferred” service provider, the provider in question had to pay defendant $36 per year for each account it maintained under the plan administered by defendant. Defendant successfully moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), prompting this appeal by plaintiff.
We affirm. “A cause of action to recover damages pursuant to General Business Law § 349 has three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act” (Beneficial Homeowner Serv. Corp. v Williams, 113 AD3d 713, 714 [2014] [internal quotation marks and citation omitted]; see State of N.Y. Workers’ Compensation Bd. v 26-28 Maple Ave., Inc., 80 AD3d 1135, 1136 [2011]; Elacqua v Physicians’ Reciprocal Insurers, 52 AD3d 886, 888 [2008]). “The threshold requirement of consumer-oriented conduct is met by a showing that ‘the acts or practices have a broader impact on consumers at large’ in that they are ‘directed to consumers’ or ‘potentially affect similarly situated consumers’ ” (Cruz v NYNEX Info. Resources, 263 AD2d 285, 290 [2000], quoting Oswego Laborers’ Local 214 Pen *1191 sion Fund v Marine Midland Bank, 85 NY2d 20, 25, 27 [1995]; see Kaufman v Medical Liab. Mut. Ins. Co., 92 AD3d 1057, 1058 [2012]; State of N.Y. Workers’ Compensation Bd. v 26-28 Maple Ave., Inc., 80 AD3d at 1136). “[Consumers,” in turn, generally are defined as “those who purchase goods and services for personal, family or household use” (Medical Socy. of State of N.Y. v Oxford Health Plans, Inc., 15 AD3d 206, 207 [2005] [internal quotation marks and citations omitted]; see Cruz v NYNEX Info. Resources, 263 AD2d at 289). An act or practice will be deemed to be deceptive where it “is likely to mislead a reasonable consumer acting reasonably under the circumstances” (David v #1 Mktg. Serv., Inc., 113 AD3d 810, 812 [2014] [internal quotation marks and citations omitted]; see 84 Lbr. Co., L.P. v Barringer, 110 AD3d 1224, 1227 [2013]; State of N.Y. Workers’ Compensation Bd. v 26-28 Maple Ave., Inc., 80 AD3d at 1137).
Applying these principles to the matter before us, it is readily apparent that Supreme Court properly granted defendant’s motion to dismiss. As a starting point, the underlying complaint fails to sufficiently allege that defendant’s purportedly “deceptive practices [were] aimed at the general public” (84 Lbr. Co., L.P. v Barringer, 110 AD3d at 1227). In this regard, it is undisputed that defendant contracted with the plan sponsors, i.e., the relevant school districts, and not the districts’ individual employees, the latter of whom selected their particular investment options from the list of service providers chosen by their employers. School districts, as business-like entities, cannot properly be viewed as consumers for purposes of General Business Law § 349 (see generally Medical Socy. of State of N.Y. v Oxford Health Plans, Inc., 15 AD3d at 207) and, therefore, defendant’s conduct in promoting and describing its administrative services relative to Internal Revenue Code (26 USC) § 403 (b) plans cannot be said to be “directed at the consuming public” (Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 343 [1999]) or to have “broad, consumer-oriented ramifications” (U.W. Marx, Inc. v Bonded Concrete, Inc., 7 AD3d 856, 858 [2004]; see Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25). Thus, even affording the complaint a liberal construction, accepting the allegations contained therein as true and affording plaintiff the benefit of every favorable inference (see Vectron Intl., Inc. v Corning Oak Holding, Inc., 106 AD3d 1164, 1165 [2013]), plaintiff failed to state a cause of action under General Business Law § 349 and, therefore, Supreme Court properly dismissed the complaint pursuant to CPLR 3211 (a) (7).
We reach a similar conclusion with respect to Supreme Court’s *1192 alternative ground for dismissal. Dismissal of a complaint under CPLR 3211 (a) (1) is appropriate “where the documentary evidence utterly refutes [the] plaintiff’s factual allegations, conclusively establishing a defense as a matter of law” (State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d 1575, 1576-1577 [2012] [internal quotation marks and citations omitted]). Although plaintiff alleged that defendant failed to conspicuously disclose that any service provider participating in P3 had to pay certain administration fees in order to be designated as a “preferred” provider, such allegation is plainly refuted by the documentary evidence contained in the record, including the very materials tendered by plaintiff.[1] Without belaboring the point, the record reflects that by reviewing the contents of defendant’s website and following the hyperlinks contained therein (as illustrated by plaintiffs exhibits H, I, K and L in opposition to defendant’s motion to dismiss), anyone with Internet service would have been able to access defendant’s “Evaluation Matrix,” which described the precise weight to be accorded to the various qualifications used in determining which service providers would be allowed to participate in P3. Notably, this scoring matrix plainly indicated that a potential service provider’s willingness to offset the employer’s administrative fee accounted for 50% of the provider’s overall score. Such proof, coupled with the additional materials tendered by defendant, including a transcript of a webinar conducted in December 2011,[2] more than supports Supreme Court’s finding that defendant “extensively and conspicuously” disclosed the payment structure of P3 to its clients, thereby refuting any assertion that defendant engaged in deceptive practices (see Sands v Ticketmaster-N.Y., Inc., 207 AD2d 687, 687 [1994], lv denied 85 NY2d 904 [1995]; Lewis v Hertz Corp., 181 AD2d 493, 494 [1992], lv dismissed 80 NY2d 893 [1992]).[3] Accordingly, Supreme *1193 Court properly granted defendant’s motion to dismiss the complaint pursuant to CPLR 3211 (a) (1).
Peters, BJ., Lahtinen and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

. Both exhibits D and F to plaintiffs complaint (the former being a letter sent to defendant’s clients in late summer or early fall 2011 and the latter being an overview of P3 that was published on defendant’s website) indicate that one of the stated objectives/criteria for selecting service providers for P3 was the applicant’s willingness “to assist employers . . . with plan administrative fees” or “to assume costs associated with plan administration.”

. In response to a question regarding the costs to a school district that elects to enroll in P3, defendant’s president replied, “It is a requirement of P3 that P3 service providers pay the cost of administration as a normal cost of doing business, just like they would [pay] their electric bill, lease rents, advertising, sales promotion[s], et cetera, et cetera.”

. Although plaintiff now asserts that portions of defendant’s website were updated following the commencement of this action, we need note only that *1193 plaintiff expressly relied upon such materials in opposing defendant’s motion to dismiss and, as Supreme Court found, “[did] not contest the authenticity” thereof.