■ Jose M. Pacheco, Appellant, v United Medical Associates, P.C., et al., Respondents. [759 NYS2d 556] —Mercure, J.P. Appeal from an order of the Supreme Court (Relihan, Jr., J.), entered January 25, 2002 in Broome County, which, inter alia, partially granted defendants' motion to dismiss the complaint.

Plaintiff provided medical services for defendant United Medical Associates, P.C. (hereinafter UMA) from 1992 until 1995. Plaintiff then opened his own medical practice in the Village of Johnson City, Broome County, whereupon UMA successfully brought an action against plaintiff to enforce the terms of a restrictive covenant not to compete contained in the parties' employment agreement. Plaintiff counterclaimed, asserting that UMA breached the contract by failing to provide referrals and refusing to pay plaintiff an appropriate salary and bonuses, as well as claims for fraud and misrepresentation. Supreme Court (Rose, J.) granted UMA a permanent injunction prohibiting plaintiff from engaging in the practice of medicine within 20 miles of UMA's office until October 1997 and granted plaintiff's counterclaim to the extent of awarding him unpaid compensation.

In August 2001, plaintiff commenced this action against UMA and defendant United Health Services Hospitals, Inc. (hereinafter UHS), which operates the hospitals and clinics in which UMA members practice, as well as other individual physicians who are officers or otherwise affiliated with the two organizations, and employees and principals of UMA and UHS. Plaintiff alleged tortious interference with an employment contract, tortious interference with prospective business relations, race-based disparate impact discrimination and viola-

tions of the Fair Credit Reporting Act. Defendants moved to dismiss the complaint as barred by res judicata and the statute of limitations and for failure to state a cause of action. Plaintiff cross-moved for leave to file an amended complaint.

Supreme Court denied the cross motion to amend the complaint and dismissed plaintiff's causes of action for tortious interference with a contract, tortious interference with prospective business relations, and violations of the Fair Credit Reporting Act. The court also dismissed all racial discrimination claims other than those asserted against UHS, defendant Mark O'Neill and defendant Rajesh Dave regarding alleged pay disparities between plaintiff and other UHS personnel. Plaintiff appeals.

Plaintiff argues that Supreme Court erred in dismissing his tortious interference with a contract claim on res judicata grounds. Plaintiff contends that the claim related to his contract with UHS, as opposed to his contract with UMA. A review of plaintiff's complaint, however, indicates that he did not allege any interference with or breach of his contract with UHS; instead, the complaint set forth a series of alleged injuries and contractual breaches perpetrated by UMA. Inasmuch as plaintiff's claim arose out of the same transaction or series of transactions as the counterclaim resolved in the 1997 litigation between plaintiff and UMA, the claim is barred by the doctrine of res judicata (see *Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343, 347 [1999]; *O'Brien v City of Syracuse,* 54 NY2d 353, 357 [1981]).

Plaintiff's second cause of action, for tortious interference with prospective business relations, arises out of his allegations that defendants refused to see his patients or directed his patients to UMA physicians, and that UMA sent a letter "to the entire medical community * * * informing them that they were not to have any dealing with Plaintiff because he left UMA." Plaintiff asserts that these actions harmed his prospective business relationships with his established patients. Plaintiff also claims that defendant Nancy Shumeyko, a UMA member physician, interfered with his business with other treating physicians and UHS hospitals by refusing to see one of his patients.

In order to recover damages for tortious interference with prospective business relations, a plaintiff must demonstrate both "wrongful means" and "that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations" (*Jabbour v Albany Med. Ctr.,* 237 AD2d 787, 790 [1997]; *see Chemfab Corp. v Integrated Liner Tech.,*

263 AD2d 788, 790-791 [1999]). Here, plaintiff has not alleged how or whether his contractual relationships, prospective or current, with specific patients, UHS or other treating physicians were actually damaged by defendants' conduct. That is, "there is no allegation that plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship as a result of defendants' conduct" (*Korn v Princz*, 226 AD2d 278, 279 [1996] [citation omitted]). Thus, the complaint fails to state a cause of action sounding in tortious interference with prospective business relations.

We reach a similar result with respect to plaintiff's third cause of action, alleging race-based disparate impact discrimination in violation of the Human Rights Law (Executive Law § 296). Plaintiff's claims in this regard against UMA and its employees other than Shumeyko are based upon his allegations of breach of contract by UMA or upon events that occurred shortly after he left UMA. These claims could have been included in the prior suit and, indeed, some were asserted therein and, thus, the claims are barred by the doctrine of res judicata (*see Parker v Blauvelt Volunteer Fire Co., supra* at 347; *O'Brien v City of Syracuse, supra* at 357) or by the applicable three-year statute of limitations (*see* CPLR 214 [2]; *Koerner v State of New York, Pilgrim Psychiatric Ctr.*, 62 NY2d 442, 446 [1984]).

Plaintiff additionally argues that Shumeyko's refusal to see his patient and UHS's employment practices and procedures—including subjecting him to drug testing, opening his private correspondence and paying him a salary lower than that of other physicians performing similar duties—had a disparate impact on him based upon his race.* We observe initially that this claim is improperly denominated. Plaintiff does not seek to demonstrate that " 'employment practices that are facially neutral in their treatment of different groups * * * in fact fall more harshly on one group than another and cannot be justified by business necessity' " (*Hazen Paper Co. v Biggins*, 507 US 604, 609 [1993], quoting *International Bhd. of Teamsters v United States*, 431 US 324, 335 n 15 [1977]). Instead, plaintiff makes a "disparate treatment" claim, asserting that he was treated " 'less favorably than others because of [his] race' " (*Hazen Paper Co. v Biggins, supra* at 609, quoting *International Bhd. of Teamsters v United States, supra* at 335 n 15).

---

* Defendants did not file a notice of appeal from that portion of Supreme Court's order that partially denied their motion to dismiss the complaint. Thus, defendants' arguments regarding that portion of the court's order are not properly before this Court (*see Murphy v Finer Home Alterations*, 300 AD2d 782, 783 [2002]).

Executive Law § 296 (1) (a) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or an employer or licensing agency, *because of the * * * race * * * of any individual*, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" (emphasis added). Assuming without deciding that Shumeyko's actions could be attributed to either of plaintiff's employers, plaintiff fails to allege that her actions and UHS's practices, other than those concerning disparate pay, were related to his race. Rather, plaintiff claims that these actions were undertaken in retaliation for his departure from UMA. Accordingly, plaintiff did not demonstrate that any adverse employment actions "occurred under circumstances raising the inference of unlawful discrimination" (*Sommerville v R.C.I.*, 257 AD2d 884, 884 [1999]; *see Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]), and Supreme Court properly dismissed plaintiff's claims of disparate treatment at issue here.

In his last cause of action, plaintiff asserted that "a false report [was placed] on [p]laintiff's credit history * * * in violation of General Business Law §§ 380 *et seq.*" This cause of action is evidently based upon plaintiff's current claim that UMA falsely placed on his credit report the award of costs and disbursements that it received as an offset against the judgment awarded in plaintiff's favor in the prior action. Even assuming that UMA could be subject to civil liability under General Business Law article 25 (*see* General Business Law § 380-a [e], [i]; §§ 380-*l*, 380-m), the complaint does not allege that it was actually UMA that placed the inaccurate information on the report and, thus, it does not state a cause of action under that statute.

Finally, we conclude that Supreme Court properly denied plaintiff's cross motion to amend his complaint. In support of the cross motion to amend, plaintiff submitted only an affidavit from his attorney, who did not state that she had personal knowledge of the facts. Absent any additional showing, plaintiff failed to provide adequate evidentiary support for the cross motion to amend and Supreme Court did not abuse its discretion in denying that cross motion (*see Jackson v Dow Chem. Co.*, 295 AD2d 855, 856 [2002]; *Mathiesen v Mead*, 168 AD2d 736, 737 [1990]).

The parties' remaining contentions are either not properly before us or lacking in merit.

Crew III, Spain and Kane, JJ., concur; Rose, J., not taking part. Ordered that the order is affirmed, with costs.